**WO**                    NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wendell Russell, *et al.*, | No. CV-16-02887-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Swick Mining Services USA Incorporated, *et al.*, | |
| Defendants. | |

At issue is putative class action Plaintiffs Wendell Russell, Michael Oelke, Ricky Rowland, and Randy McGrath's Motion to Amend Scheduling Order (Doc. 27, Mot. to Amend), to which Defendant Swick Mining Services USA, Inc. filed a Response (Doc. 34, Mot. to Amend Resp.), and in support of which Plaintiffs filed a Reply (Doc. 41, Mot. to Amend Reply); and Plaintiffs' Motion for Conditional Collective Action Certification, Appointment of Class Counsel, and Request for Expedited Court-Supervised Corrective Notice of Pending Collective Action (Doc. 33, Mot. for Cert.), to which Defendant filed a Response (Doc. 38, Mot. for Cert. Resp.), and Plaintiffs filed a Reply (Doc. 35, Mot. for Cert. Reply). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f).

## I.    BACKGROUND

Plaintiffs filed their original Complaint (Doc. 1), the current operative pleading, on August 29, 2016, alleging that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, when it failed to pay them, as well as other similarly

situated employees, overtime wages owed to them. Defendant filed its Answer on September 30, 2016, after a short extension of time to respond. (Docs. 6, 9-10.)

In late September or early October, the parties entered into settlement discussions and a tolling agreement continuing the statute of limitations period for their claims to December 15, 2016. (Doc. 29, Ex. A.) On November 16, 2016, the Court entered a Scheduling Order setting a December 23, 2016 deadline for amending the complaint or adding parties. (Doc. 18.) On December 9, 2016, the parties entered a stipulation to extend the deadline for any conditional certification motion to January 31, 2017. (Docs. 24-25.) The present Motions followed.

## II.  LEGAL STANDARDS

### A.  Fed. R. Civ. P. 15 and 16

A party may amend a pleading once as a matter of course within 21 days after serving it, or within 21 days of service of, among others, a Rule 12(b)(6) motion. Fed. R. Civ. P. 15(a). In all other circumstances, absent the opposing party's written consent, a party must seek leave to amend from the court. Fed. R. Civ. P. 15(a)(2). Although the decision to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend shall be freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). "In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block,* 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotation marks omitted).

However, the policy in favor of allowing amendments is subject to limitations. *Madeja v. Olympic Packers,* 310 F.3d 628, 636 (9th Cir. 2002) (holding that after a defendant files a responsive pleading, leave to amend is not appropriate if the "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."). Where a court has entered a scheduling order under Rule 16 and set a deadline for amending the pleadings, the Court "should address the issue under

[Rule] 16." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Under Rule 16, a party must show "good cause for not having amended their complaint before the time specified in the scheduling order expired." *Id.* "This standard 'primarily considers the diligence of the party seeking the amendment.'" *Id.* (citing *Johnson*, 975 at 607.

### B.   FLSA Conditional Class Certification

An FLSA action "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The decision to certify a collective action under the FLSA is within the discretion of the Court. *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006). To certify a collective action under the FLSA, the Court must determine whether named Plaintiffs and potential opt-in members are "similarly situated." 29 U.S.C. § 216(b). The FLSA does not define the term "similarly situated," and the Ninth Circuit Court of Appeals has not construed the term. *Wood v. TriVita, Inc.*, No. CV–08–0765–PHX–SRB, 2009 WL 2046048, at *2 (D. Ariz. Jan. 22, 2009).

The majority of courts, including this one, have adopted the two-tiered approach to seeking class certification. *See, e.g., Bogor v. Am. Pony Exp., Inc.*, No. 09–2260–PHX–JAT, 2010 WL 1962465, at *2 (D. Ariz. May 17, 2010). Under that approach, courts evaluate the case under a lenient standard and may grant conditional certification. *See Juvera v. Salcido*, 294 F.R.D. 516, 519 (D. Ariz. 2013). If the Court "'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery." *Id.* (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001)). The Court then reevaluates, usually prompted by a motion for decertification, the "similarly situated" question at a later stage, once discovery has produced sufficient information regarding the nature of the claims. *Id.* This determination, under a stricter standard, is based on much more information, which makes a factual determination possible. *Id.*

**III.   ANALYSIS**

    **A.   Motion to Amend**

Plaintiffs seek to amend their Complaint, primarily to add a subclass of putative members based on a different allegedly violative payment structure. (*See* Doc. 27, Ex. A.) Defendant argues that Plaintiffs have alleged only carelessness in failing to amend before the Scheduling Order deadline and that such inadvertence is insufficient to meet Rule 16's good cause standard. (Mot. to Amend Resp. at 2 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).) Plaintiffs respond with several "good cause" factors: (1) the collective action has not been conditionally certified and no additional notice will need to be sent; (2) some putative class members are part of both proposed classes (*i.e.*, the class proposed in the original Complaint, as well as the second subclass in the proposed Amended Complaint); (3) formal discovery is in its infancy and had not commenced at the time of filing; (4) the statute of limitations has not expired on any of Plaintiffs' claims; (5) Plaintiffs seek not to add another party, but only an hourly wage component to their existing claim; and (6) their Motion was filed one month after the Court-imposed deadline and "within days" of Plaintiffs' counsel realizing that the stipulated extension to file a motion seeking conditional class certification did not also apply to amendment. (Mot. to Amend at 5-6.)

Much of Plaintiffs' argument focuses on lack of prejudice, rather than diligence, which Defendant argues is "immaterial to this analysis." (Mot. to Amend. Resp. at 2 (citing *Coleman*, 232 F.3d at 1295).) However, while the district court primarily considers diligence of the party seeking amendment, the existence and degree of prejudice to the party opposing modification may also be considered. *Johnson*, 975 F.2d at 609. If the party was not diligent, however, "the inquiry should end." *Id.* While the Court will consider prejudice, as well as other factors, it agrees that almost all of Plaintiffs' above justifications are irrelevant as to good cause.

Still, because Defendant will suffer no prejudice whatsoever from allowing Plaintiffs to file their Amended Complaint—the statute of limitations has not yet run, no

meaningful discovery or notices have been sent, and Defendant will be forced to litigate the substance of Plaintiffs' proposed Amended Complaint in one form or another—the Court searches for a modicum of diligence and good cause. In support of its diligence claims, Plaintiffs cite their belief that the extension of time to file for class certification equally applied to amendment and that, once Plaintiffs' counsel realized it did not, Plaintiffs filed their Motion to Amend "within days." (Mot. to Amend at 5-6.) Plaintiffs also state that on January 17, 2017, they were informed of Defendant's communication with putative class members of the second proposed subclass, which included checks to compensate for bonuses owed—communications that purportedly inform their proposed Amended Complaint. (Mot. to Amend at 4.) But Plaintiffs' main argument is that any lack of diligence is excusable, even if based on mistake, and that once their mistake was realized, they were diligent in seeking amendment. Defendant notes that Plaintiffs knew of the issues related to the second proposed subclass prior to their Court ordered deadline, illustrating a lack of diligence. (Mot. to Amend Resp. at 3.) The Court agrees that Plaintiffs' argument stretches the bounds of diligence and good cause. However, the secondary and tertiary factors that the Court may consider in deciding Plaintiffs' Motion weigh overwhelmingly in favor of amendment. Not only is there no prejudice to Defendant—which it does not dispute—forcing the filing of a second, partially parallel action would not only be wasteful to the parties, but would unnecessarily exhaust judicial resources, cause duplicative filings and efforts, and may be subject to consolidation. Despite a slight showing of diligence and good cause, the Court will not demand an exercise in waste and will grant Plaintiffs' Motion to Amend.

**B.    Motion for Conditional Class Certification, Appointment of Class Counsel, and Request for Expedited Court-Supervised Corrective Notice**

While Defendant denies Plaintiffs' allegations, arguing that they misconstrue the pay structures at issue, it nonetheless does not oppose Plaintiffs' request for conditional collective action certification, given the lenient standard in the first phase. (Mot. for Cert. Resp. at 2-3.) Nor does Defendant object to Plaintiffs' counsel serving as interim class

counsel. (Mot. for Cert. Resp. at 10.) Thus, the Court will grant those portions of Plaintiffs' Motion, respectively.

Defendant does object to certain aspects of Plaintiffs' Motion for Expedited Court-Supervised Notice, chiefly: Plaintiffs' (1) class definition; (2) method of mailing their proposed Notice and Consent forms; (3) full request for employee contact information; and (4) proposed posting of Notice and Consent forms. Thus, the Court will only address those issues that Defendant disputes, analyzing each in turn.

### 1.     Putative Class Description

Defendant objects to Plaintiffs' characterization of the putative class action as overly broad. (Mot. for Cert. Resp. at 4-5.) The current putative class Plaintiffs seek to provide notice to is described as:

> All current and former employees of Swick Mining Services (USA), Inc. who perform or have performed work as Drillers, Trainee Drillers, Helpers or similar duties for Swick Mining Services (USA), Inc. since August 29, 2013 to the present.

(Mot. for Cert., Ex. A.) Defendant contends that the description is overbroad as: (1) the phrase "similar duties" is undefined and vague; (2) it does not apply only to those who were explicitly subject to a flat sum payment for a day's work, as is alleged in Plaintiffs' original Complaint; and (3) it exceeds both the two or three year statute of limitations under the FLSA. (Mot. for Cert. Resp. at 5.)

As to Defendant's first argument, Plaintiffs respond that their lack of knowledge as to all Defendant's job titles does not preclude use of the term "similarly situated." (Mot. for Cert. Reply at 3.) The Court agrees. The Ninth Circuit has not defined the term "similarly situated" and during the first phase, Plaintiffs' burden regarding similarity of class members is low. *See, e.g.*, *Wetheim v. Ariz.*, No. CIV 92–453 PHX RCB, 1993 WL 603552, at *1 (D. Ariz. Sept. 30, 1993) ("All that need be shown by plaintiff is some identifiable factual or legal nexus that binds together the various claims of the class members . . ."). As Plaintiffs note, any putative plaintiff that mistakenly opts-in but is not sufficiently similarly situated can and will be excluded from the class. Moreover,

Defendant provides no precedent that would guide the Court's analysis in excluding Plaintiffs' proposed language. (*See* Mot. for Cert. Resp. at 4.) Accordingly, the term "similarly situated" may remain in Plaintiffs' class definition.

Defendant's second argument, that Plaintiffs' definition improperly includes workers who were not subject to a flat sum per-day (Mot. for Cert. Resp. at 5), is only relevant to Plaintiffs' original Complaint. Because the Court will allow Plaintiffs to file their proposed Amended Complaint that includes two subclasses, the second of which is composed of employees who received a nondiscretionary bonus, Defendant's objection is no longer relevant. Thus, the Court will deny Defendant's proposed modification limiting the class to workers who were paid "a flat sum for a day's work." (Mot. for Cert. Resp. at 5.)

Finally, Defendant's third argument, that Plaintiffs' definition is incongruous with any applicable statute of limitations (Mot. for Cert. Resp. at 5), is well taken. While Defendant cites no analogous precedent, it correctly cites the applicable statute of limitations as counted from the date the notice is sent—two years generally, and three for willful violations. 29 U.S.C. § 255. Further, the limitation periods are not stayed or tolled until each opt-in plaintiff has filed his or her written consent form with the Court, as Plaintiffs acknowledge. (Mot. for Cert. Reply at 5.) Nevertheless, and despite Plaintiffs' admission that the Defendant's proposed date will "likely have no impact on opt-in claims" of the first subclass (Mot. for Cert. Reply at 5), Plaintiffs seek to extend the period in the notice back to August 29, 2013—three years prior to the filing of their original Complaint. (Mot. for Cert., Ex. A.) While Plaintiffs provide non-binding authority illustrating that such class periods have been accepted, several of Plaintiffs' cited cases, in addition to being issued in other districts or circuits, specifically note their idiosyncratic facts. *See, e.g.*, *Chhab v. Darden Restaurants, Inc.*, No. 11 CIV. 8345 NRB, 2013 WL 5308004, at *15 (S.D.N.Y. Sept. 20, 2013) (allowing challenges to timeliness to be entertained at a later date but noting their discomfort with the reasoning offered by such courts, as well as the "unique timing of events" leading to its decision).

1    Accordingly, such unique cases do not convince the Court that Plaintiffs' date is
2    appropriate; nor does Plaintiffs' argument that the date should be equitably tolled as a
3    whole. (Mot for Cert. Reply. at 5-6.) Because equitable tolling is only available in
4    extraordinary circumstances, *Alvarez–Machain v. United States*, 107 F.3d 696, 701
5    (9th Cir. 1996), it serves neither the parties nor the conservation of judicial resources to
6    allow likely precluded plaintiffs to join the class, only to parse through each on a case-by-
7    case basis, searching for the exception, rather than the rule. Should potential plaintiffs
8    come forth with arguments for equitable tolling, or if discovery were to yield evidence of
9    conduct allowing equitable extension, prescriptive measures may be taken. Thus,
10   Plaintiffs' proposed Notice shall be revised to reflect a class period beginning three years
11   prior to the date the notice is sent.

12                          **2.      Notice and Consent**

13       Defendant does not object to conditional certification, including providing putative
14   class members with appropriate Notice and Consent forms. (Mot. for Cert. Resp. at 5.)
15   However, in addition to objecting to the class description, Defendant objects to the
16   characterization of its communications with employees, the opt-in period, statements
17   regarding the effect of joining the lawsuit, the omission of contact information for
18   Defendant's counsel, and alleged solicitation to participate in subsequent suits. (Mot. for
19   Cert. Resp. at 6-8.)[1]

20       First, in Section 3 of the proposed Notice, Plaintiffs wish to contextualize any
21   payments employees may have received for back overtime wages. (Mot for Cert., Ex. A.)
22   Defendant argues that the Notice mischaracterizes the communications that are not *per se*
23   improper. (Mot. for Cert. Resp. at 6.)[2] However, Defendant's communications are

---

25   [1] Defendant also takes issue with the statement of the effect of the Court's
     approval of the Notice and any ambiguity regarding the number of defendants (Mot. for
26   Cert. Resp. at 8), but Plaintiffs' Reply acquiesces to proposed clarifications as to each
     (Mot. for Cert. Reply at 9-10).

27   [2] While Plaintiffs argue that Defendant's citation to "*Kelsey*, 67 F. Supp. 3d at
     1075" is inaccurate (Mot. for Cert. Reply at 6), the Court has verified Defendant's
28   quotations therein. *See Kesley v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061 (D. Ariz. 2014).
     While Defendant's pin-cite appears to yield duplicative results in some instances,

1    relevant to the proposed Amended Complaint. Moreover, nothing in Defendant's filings

2    avers that Plaintiffs' description of the communications are factually inaccurate. (*See*

3    Docs. 38, 38-1.) While Defendant is correct that its communication with employees

4    regarding potential compensation owed to them is not *per se* improper, neither is

5    Plaintiffs' attempt to apprise employees of their rights, and Plaintiffs do not seek to

6    restrict those communications—as is the case in Defendant's cited precedent.

7         Second, in Section 4 of the proposed Notice, Plaintiffs propose a 90-day opt-in

8    period, while Defendant asserts that a 60-day deadline is sufficient. (Mot. for Cert. Resp.

9    at 7.) Because Plaintiffs have provided ample facts showing that the putative plaintiffs

10   have peculiar work schedules and job-related travel, as well as abundant precedent on the

11   issue, the Court finds a 90-day opt-in period appropriate. *See Williams v. U.S. Bank Nat.*

12   *Ass'n*, 290 F.R.D. 600, 614 (E.D. Cal. 2013) (rejecting conclusory proposal of a 60-day,

13   rather than 90-day, opt-in period where Defendant offered no "independent reason the

14   period should be reduced from 90 to 60 days," other than that "some courts in this Circuit

15   have approved 60 days, and others have approved 90 days").

16        Third, Defendant argues that the proposed Notice should include a statement

17   advising potential plaintiffs that they may be required to respond to written discovery,

18   appear for a deposition, and/or testify at trial. (Mot. for Cert. Resp. at 7.) However, in

19   Defendant's cited precedent, the plaintiffs explicitly agreed to add a similar discovery

20   admonition. *See Kesley*, 67 F. Supp. 3d at 1074; *O'Neal v. America's Best Tire LLC*, No.

21   CV-16-00056-PHX-DGC, 2016 WL 3087296, at *6 (D. Ariz. June 2, 2016). Here,

22   Plaintiffs strongly oppose such language, and the Court agrees that it may have a chilling

23   effect on recipients who may be unfamiliar with litigation. Any opt-in who remains

24   reticent to actively engage in discovery will have abundant opportunity to withdraw from

25   the action. Accordingly, the Court will not require a description of potential discovery

26   obligations in Plaintiffs' Notice. *See Prentice v. Fund for Pub. Interest Research, Inc.*,

27

28   Defendant's latter cite (Mot. for Cert. Resp. at 7), while misspelled, yields the correct
     case. Thus, Plaintiffs' assessment that they were unable to diligently locate or respond to
     the citation is incorrect.

No. C-06-7776 SC, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007) ("[s]uch language is unnecessary and inappropriate . . . [as] individualized discovery is rarely appropriate in FLSA collective actions," and "[i]ncluding a warning about possible discovery when that discovery is unlikely will serve no purpose other than deterring potential plaintiffs . . . based on unfounded concerns about the hassle of discovery").

Fourth, Defendant advocates adding its counsel's contact information to Sections 8 and 9 of the proposed Notice. (Mot. for Cert. Resp. at 7.) Once again, Defendant cites to precedent in which the plaintiffs agreed to include the language. (Mot. for Cert. Resp. at 7 (citing *Coyle v. Flowers Foods Inc.*, No. CV-15-01372-PHX-DLR, 2016 WL 4529872, at *7 (D. Ariz. Aug. 30, 2016).) Further, Plaintiffs respond that adding such information may cause confusion and that if a person has already decided to opt-in, communication by Defendant's counsel would essentially invade an imminent attorney-client relationship. Still, cases within this District exist holding that granting Plaintiffs' counsel exclusive access to potential collective action members could provide them "an avenue to mislead potential collective action members in an attempt to secure their consent to join the lawsuit." *Bados Madrid v. Peak Constr., Inc.*, No. 2:09-CV-00311 WJS, 2009 WL 2983193, at *3 (D. Ariz. Sept. 17, 2009). Further, and as the Court previously addressed, nothing precludes pre-opt-in communication with a potential § 216(b) plaintiff, "unless the communication undermines or contradicts the Court's notice." *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002). "If an undermining or contradictory communication is sent, the Court can control the proceedings through sanctions, requiring payment for a curative notice, regulation of future *ex parte* communications, or other appropriate orders." *Id.* Accordingly, the Court will allow Defense counsel's contact information to be included in the Notice, subject to the foregoing admonition, precluding all communication proscribed by applicable law.

Fifth, Section 3 of Plaintiffs' proposed Consent form states that if the action is decertified, opt-ins consent to refile those claims in a separate or related action again. Defendant argues that this impermissibly solicits the putative class members for

subsequent lawsuits in the event this action is ultimately decertified. (Mot. for Cert. Resp. at 8.) Because the Court will allow Plaintiffs to file their proposed Amended Complaint and Plaintiffs submit that the language was included as a precaution in the event their Motion to Amend was denied, the language and controversy are moot. Thus, the language shall be stricken from any Notice and Consent.

### 3.    Personal Contact Information

Defendant agrees to provide the last known mailing and email address of the potential collective action members, but opposes providing telephone numbers, social security numbers, and birth dates of its employees due to privacy concerns. (Mot. for Cert. at 8.) Plaintiffs respond only to say that such identifying information would increase the probability that those entitled to notice receive it. (Mot. for Cert. Resp. 10.) While Plaintiffs may be correct, the Court sees no reason to demand such unnecessarily intrusive information to be produced and will not require Defendant to disclose such personal identifiers. *See Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184, 1196 (D. Ariz. 2014) (denying request for defendants to provide telephone and social security numbers of potential plaintiffs); *Taylor v. Autozone, Inc.*, No. CV-10-8125-PCT-FJM, 2011 WL 2038514, at *5 (D. Ariz. May 24, 2011) (declining to provide telephone and social security numbers as that information is "sensitive, and putative class members may have provided personal data to defendant with the expectation of confidentiality"); *Stickle v. SCI W. Mkt. Support Ctr., L.P.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at *7 (D. Ariz. Sept. 30, 2009) (supplying "the phone numbers of thousands of Defendants' current and former employees seems like a needless intrusion into the privacy of these individuals and their families . . . . Similarly, Plaintiffs are not entitled to any social security numbers.") (citations omitted)).

Likewise, Defendant does not object to the Notice and Consent forms being both mailed and emailed, but objects to resending the Notice and Consent forms of an employee whose mailed copy of the form is returned as undeliverable or otherwise allowing Plaintiffs to send a second notice. (Mot. for Cert. Resp. at 9.) Plaintiffs respond

by reiterating potential plaintiffs' peculiar work schedules may require multiple notices to ensure a fulsome class. (Mot. for Cert. Reply at 8, 10.) The Court agrees with Plaintiffs and will not preclude resending the Notice and Consent forms when a mailed copy is returned as undeliverable or sending a second notice; two attempts to solicit opt-in parties does not constitute harassment or pressure. *See, e.g.*, *Sandoval v. Tharaldson Employee Mgmt.*, No. EDCV 08-00482-VAPOP, 2009 WL 3877203, at *11 (C.D. Cal. Nov. 17, 2009) (exhibiting common practice of FLSA settlement agreements to include multiple notices before granting court approval).

### 4.      Physical Placement of Notice and Consent

Defendant objects to the posting of Notice and Consent copies at each of its business locations and worksites, as they have no control over their client's worksites and posting them at the properties it does control would have no effect since they are only sporadically populated with any employees who could be potential class members. (Mot. for Cert. Resp. at 9-10.) Plaintiffs do not assert a meaningful response to this argument and, in recognition of the unique working arrangement between Defendant and its employees potentially at issue, the Court will not permit the proposed physical postings.

## IV.    CONCLUSION

Although Plaintiffs' purported belief that the extension of time to move for class certification also tolled their time to amend their Complaint was mistaken, Plaintiffs were fairly diligent in attempting to file an Amended Complaint and diligent in litigating this suit generally. Given that the entirety of the remaining factors militate towards amendment, the Court will allow Plaintiffs to amend their Complaint. Because Defendant does not oppose class certification or the appointment of conditional class counsel, the Court will grant each. The class Notice and Consent forms issued shall fully comply with the foregoing.

**IT IS THEREFORE ORDERED** granting Plaintiffs Wendell Russell, Michael Oelke, Ricky Rowland, and Randy McGrath's Motion to Amend Scheduling Order (Doc. 27).

**IT IS FURTHER ORDERED** that Plaintiffs shall file its Amended Complaint on the docket by April 19, 2017.

**IT IS FURTHER ORDERED** granting Plaintiffs' Motion for Conditional Collective Action Certification (Doc. 33).

**IT IS FURTHER ORDERED** that Plaintiffs' Notice and Consent forms shall be written and sent in compliance with this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' counsel will serve as interim class counsel.

Dated this 14th day of April, 2017.

Honorable John J. Tuchi
United States District Judge